FILED & ENTERED

OCT 22 2020

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY kaaumoan DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA—LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>ENRAMADA PROPERTIES, LLC,<br><br>Debtor(s).<br><br>In re:<br><br>OSCAR RENE NOVOA and<br>SYLVIA NOVOA,<br><br>Debtor(s). | Case No.: 2:19-bk-19869-WB<br>Jointly administered with:<br>Case No.: 2:19-bk-21788-WB<br><br>CHAPTER 11<br><br>**ORDER OVERRULING AMENDED SUPPLEMENTAL OBJECTION TO CLAIM NO. 4-2**<br><br>Date:        September 10, 2020<br>Time:       10:00 AM<br>Courtroom: 1375 |

    At the above-captioned date and time, the Court held a hearing on the debtors' Amended Supplemental Objection of Oscar Rene Novoa and Sylvia Novoa to Claim No 4-2 ("Claim Objection") [Docket No. 224]. Appearances were made as reflected on the record. The Court heard oral argument and took the matter under advisement. Based on the pleadings, evidentiary record, and oral argument of counsel, and for the reasons that follow, the Court now issues this

-1-

order overruling the Claim Objection.

## STATEMENT OF FACTS

On or about December 7, 2015, debtor Enramada Properties LLC ("Enramada") entered into a written agreement with Noel Zepeda-Moreno ("Claimant") whereby Claimant, as a business partner in the newly formed partnership, was responsible for the down payment in the purchase of investment property located at 17850 Alexander Street, Perris, California 92570 ("Alexander Street Property") (the "Partnership Agreement"). In connection with the Partnership Agreement, the parties agreed Claimant would be reimbursed all of the monies used for the purchase and remodeling of the property. Among other provisions, the parties also agreed that each partner would receive 50% of the profits from the sale of the property with Claimant being responsible for the monthly mortgage payments.

On January 29, 2018, Claimant filed a complaint ("Complaint") against the debtors Enramada, its managing member Sylvia Novoa ("Sylvia") and Oscar Novoa ("Oscar") (the "Novoas") (collectively, the "Debtors") in Riverside County Superior Court, styled *Zepeda-Moreno v. Enramada Properties LLC, Oscar Novoa and Sylvia Novoa*, Case No. RIC1801978 (the "State Court Action"). The Complaint asserted a claim for breach of contract. Among other things, Claimant alleged that, upon learning that Claimant had received a large settlement in a work-related accident, Debtors asked Claimant, Oscar's estranged cousin, to become a business partner in a venture to purchase investment property. Claimant, Oscar and Sylvia became partners and Enramada purchased the Alexander Street Property for $205,000 on February 5, 2015. Debtors sold the property for $355,000 on January 11, 2018, with all funds distributed to Enramada. According to Claimant's declaration in support of the default judgment, Claimant repeatedly attempted to contact Debtors regarding payment of his share of the distribution from the sale proceeds as agreed upon pursuant to their agreement but Debtors never paid him his share.

Debtors failed to answer the Complaint, and a default judgment in the amount of $126,666.96 was entered against Debtors on October 15, 2018. The award consisted of the following amounts: (1) $120,635.20 in damages; and (2) $6,031.76 in interest.

Debtor Enramada filed a chapter 11[1] case on August 22, 2019.  Debtors Oscar and Sylvia filed their chapter 11 case on October 5, 2019.  On November 4, 2019, Claimant filed a proof of claim, Claim No. 4-1 (and subsequently amended claim, Claim No. 4-2) in debtor Oscar and Sylvia's case[2], in the amount of $126,666.96.

Debtors filed the Claim Objection to Claim No. 4-2 on April 6, 2020.  A hearing was held on May 28, 2020.  The Court continued the hearing to allow Oscar and Sylvia to amend the objection.  They filed a Supplemental Objection [Docket No. 212] and an Amended Supplemental Objection [Docket No. 224].  A final hearing was held on September 10, 2020 where the Court took the matter under submission.

**DISCUSSION**

In California, it is well settled that a default judgment is:

> [C]onclusive to the issues tendered by the complaint as if it had been rendered after answer filed and trial had on the allegations denied by the answer.... Such a judgment is res judicata as to all issues aptly pleaded in the complaint and defendant is estopped from denying in a subsequent action any allegations contained in the former complaint.

*In re Moore,* 186 B.R. 962, 971 (Bankr. N.D. Cal. 1995), quoting *Fitzgerald v. Herzer,* 78 Cal.App.2d 127 (1947).

In California, a default judgment satisfies the "actually litigated" requirement for the application of collateral estoppel.  *In re Lake,* 202 B.R. 751, 757, n. 6 (9th Cir. BAP 1996); *In re Green,* 198 B.R. 564, 566 (9th Cir. BAP 1996), *citing Four Star Elec., Inc. v. F & H Constr.,* 7 Cal.App.4th 1375 (1992).

Debtors contend in their Claim Objection that the bankruptcy court should not give preclusive effect to the default judgment because Debtors' failure to appear and defend against the State Court Action was due to extrinsic fraud or extrinsic mistake.

---

[1] Unless otherwise indicated, references to "Chapter," "Section/S" or "Code" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330; references to "Fed.R.Bankr.P." are to the Federal Rules of Bankruptcy Procedure, which make applicable certain Federal Rules of Civil Procedure ("Fed.R.Civ.P.").

[2] In Enramada's case, they are Claim Nos. 6-1 and 6-2.  These claims are not the subject of this Claim Objection.

1  A state court judgment is subject to collateral attack if the judgment was procured by extrinsic fraud. *Lake,* 202 B.R. at 758. Extrinsic fraud is an exception to the application of the full faith and credit doctrine such that a judgment procured by fraud may be disregarded by the bankruptcy court. *Id.* (recognizing bankruptcy court's jurisdiction over such a collateral attack); *In re Naemi,* 128 B.R. 273, 279 (Bankr. S.D. Cal. 1991). California law controls the exception. *Lake,* 202 B.R. at 758.

Extrinsic fraud entails preventing a party from presenting all of his case to the court, as opposed to defrauding the party with respect to the substantive rights being adjudicated at a proceeding. *E. & J. Gallo Winery v. Gallo Cattle Co.,* 967 F.2d 1280, 1287 (9th Cir. 1992). Classic examples of extrinsic fraud include keeping a party in ignorance of a lawsuit or inducing him not to appear, or concealing a claim or defense. *Lake,* 202 B.R. at 758, *citing* 8 E.B. WITKIN, CALIFORNIA PROCEDURE §§ 204–10, 215A (3d ed. 1988 & Supp.1996).

To warrant relief on the basis of extrinsic fraud, the moving party must establish: (1) facts constituting extrinsic fraud; (2) a substantial defense on the merits; and (3) diligence in seeking relief from the adverse judgment. *In re Marriage of Damico,* 7 Cal.4th 673, 29 Cal.Rptr.2d 787, 796 (1994). In addition, a party seeking relief from a default judgment must also present a satisfactory excuse for not defending in the original action. *Lake,* 202 B.R. at 759, *citing Stiles v. Wallis,* 147 Cal.App.3d 1143 (1983).

Another ground for equitable relief is extrinsic mistake. Extrinsic mistake is "a term broadly applied when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits...." ' *Parage v. Couedel,* 60 Cal.App.4th 1037, 1044 (1997); *see Kulchar v. Kulchar,* 1 Cal.3d 467, 471-73 (1969). "Extrinsic mistake is found when [among other things] ... a mistake led a court to do what it never intended...." *Kulchar,* 1 Cal.3d at 471–72; *see Sullivan v. Lumsden*, 118 Cal. 664, 669 (1897) (referees' use of wrong map was extrinsic mistake and equitable relief was available because " 'it is not a mistake of the law, or an inadvertent conclusion as to what the law is, but a mistake or inadvertence in doing something not intended to be done.' "). Generally, to prevail on an extrinsic mistake theory, the party seeking the relief must show: (1) a meritorious case; (2) a satisfactory excuse for not presenting its claim or

defense in the prior action; and (3) diligence in seeking to set aside the order or judgment upon discovery. *Stiles*, 147 Cal.App.3d at 1147-48.

When a default judgment has been obtained, equitable relief may be given only in exceptional circumstances. "[W]hen relief under [C.C.P.] section 473 is available, there is a strong public policy in favor of granting relief and allowing the requesting party his or her day in court. Beyond this period there is a strong public policy in favor of the finality of judgments and only in exceptional circumstances should relief be granted." *In re Marriage of Stevenot,* 154 Cal.App.3d 1051, 1071 (1984); *see Aheroni v. Maxwell*, 205 Cal.App.3d 284, 291 (1988).

Because the elements of extrinsic fraud and extrinsic mistake overlap, the Court will address these claims together. First, Oscar and Sylvia must show that they have a meritorious case – at minimum, a substantial defense on the merits. Oscar and Sylvia make two assertions in this regard. First, they claim that Claimant's allegations in the Complaint and in the declaration in support of the default judgment are false. Sylvia alleges that Claimant failed to make the mortgage payments on the Alexander Street Property and that Claimant falsely asserted that Debtors had him evicted from the property, among other falsehoods. They also assert that Claimant received all of his money back in any event. Oscar and Sylvia presented some documents that they state support their contention. However, the documents do not establish that the debt has been repaid in full and are contrary to the statements of Claimant in support of entry of default judgment. At best, they have shown that there would have been a factual dispute to be resolved by the trier of fact had they participated in the State Court Action. Second, the Novoas contend that the Complaint does not assert a claim against them individually since the Complaint alleges a breach of contract claim and the contract was entered into by Enramada. Thus, there is no theory of recovery asserted against them individually. Here, the Novoas have shown a substantial defense on the merits.

Next, the Novoas must demonstrate that there was extrinsic fraud or an extrinsic mistake which prevented them from defending the State Court Action. The only evidence that they presented is that once she was served with the Complaint, Sylvia asked Oscar to resolve it. Oscar did not respond to the Complaint because he did not wish to sue Claimant, a family

member. Instead, Oscar states that he tried to informally resolve the dispute with Claimant. This is not evidence of extrinsic fraud or extrinsic mistake. There is no evidence of any fraud that kept the Novoas from responding to the Complaint and pursuing their defenses. Further, there is no evidence of extrinsic mistake. There is nothing in the record to show that the court was led to do that which it did not intend to do or that the Novoas were prevented from responding to the Complaint based on a mistake extrinsic to their own.

Finally, the Novoas had to show diligence in seeking relief and because they want relief from a default judgment, a satisfactory excuse for not defending the action. The Novoas have not met their burden. They assert that they were diligent in seeking relief based on the fact that they objected to Claim 4-2 in March 2020. The default judgment was entered on October 15, 2018. While Oscar asserts that he attempted to informally resolve the dispute after the default judgment was entered, the Novoas took no action to address the issue in the state court for more than one and one-half years. This does not establish diligence. Further, the Novoas have not established a satisfactory excuse for their failure to respond to the Complaint in the first instance. They were served with the Complaint but they chose not to respond in order to avoid a legal dispute with a family member.

On balance, the Novoas have not satisfied their burden to sustain the Claim Objection based on extrinsic fraud or extrinsic mistake. While they may well have a meritorious defense based on the allegations of the Complaint, there was no extrinsic fraud or mistake that prevented them from responding to the Complaint, they did not pursue their rights with diligence or provide a satisfactory reason for not doing so.

Finally, at the final hearing on this matter, Debtors argued that equitable disallowance of Claim No. 4-2 is appropriate pursuant to *Pepper v. Litton*, 308 U.S. 295 (1939). Debtors argued that under *Pepper*, a bankruptcy court may, as a court of equity, inquire into the validity of a claim, even one that has been reduced to judgment. While *Pepper* does so hold, it involved subordination of the claim of the "dominant and controlling stockholder" of the debtor corporation under a state court judgment for alleged salary claims pursuant to a scheme to defraud creditors. 308 U.S. at 297. The primary issue dealt with in *Pepper* was whether claims

obtained by the controlling stockholders of a bankrupt corporation were to be treated equally with the claims of other creditors where the evidence revealed "a scheme to defraud." 308 U.S. at 296. *Pepper* is not on point in this case. The equitable subordination issue there is not present here. Furthermore, Debtors have not established that they are entitled to equitable relief, *i.e.*, that the default judgment was procured by fraud. There is nothing in the record to support Debtors' contention that the state court default judgment, unlike the judgment in *Pepper*, is subject to collateral attack in bankruptcy court. Debtors' current condition is the result of having failed to respond to the Complaint. Debtors have not established that they would prevail in the state court if the default were lifted, only that they may have defenses to assert. Under these circumstances, the Court cannot say that it is inequitable to creditors to allow Claim No. 4-2.

## CONCLUSION AND ORDER

Therefore, the Claim Objection is ORDERED OVERRULED.

###

Date: October 22, 2020

Julia W. Brand
United States Bankruptcy Judge